This case is Demarest v. Town of Underhill. May it please the court, my name is Jeremy Grant. I'm here on behalf of Plaintiff Appellant David Demarest. We're here today because we're seeking the reversal of the dismissal of Demarest's second amended complaint by the District Court. We believe the District Court erred by concluding that neither claim for equal protection or First Amendment retaliation was viable and stated a plausible claim in the second amended complaint. We believe that the court erred by focusing solely or primarily on allegations that were about prior litigation and allegations that were barred by the statute of limitations. If it was not clear in our brief, I hope to make it clear here that Demarest is making those allegations about the prior litigation and past conduct to establish the ill will intent of the defendants in taking their discretionary acts that support his First Amendment retaliation and equal protection claims. As this court knows, an equal protection claim has two varieties in the circuit. There's the Leclerc claims and Olek, and the District Court erred by only considering Demarest's equal protection claim as an Olek claim in the second amended complaint when it raises a viable Leclerc claim. And it's important to note that in a Leclerc claim, the standard of similarity between comparators is a lower standard than in an Olek claim. And Mr. Demarest's second amended complaint contains a number of allegations. The Leclerc claim, the similarity doesn't have to be as close, but the plaintiff has an obligation to show that the negative treatment was caused by an impermissible motive. So what are the allegations in the complaint that would support the plausibility of that here? Yes, Your Honor. Mr. Demarest has alleged that the defendants acted with malice on several occasions. For instance, in 2020, Mr. Demarest submitted a conflict of interest complaint against one of the municipal defendants, and the town took no action on that complaint. That was the one case involving B.B. Woodward, is that right? Correct. That was the comparator, was Jim B.B. Woodward's complaint, or yes, complaint against Peter Duvall. There was also a petition for public... Yes, Your Honor. So Mr. Demarest has alleged that the town has taken these actions out of ill will and spite. And in terms of specific allegations, it's difficult at the pleading stage to have specific allegations to establish ill will, malice. I believe Mr. Demarest has established that sufficiently in his second amended complaint because he's alleged that the town has taken actions to put boulders in the trail section of his road frontage. The town has also refused to provide any maintenance to his Class 4 road frontage while at the same time providing maintenance to other individuals on Class 4 roads. And in addition, Mr. Demarest has alleged a number of comments by some of the town officials that would demonstrate ill will. There's one from quite far long ago in 2009, but more recently there was an allegation about the planning commission director essentially telling Mr. Demarest that his concerns are of little concern to the town, and if he doesn't like it here, he can leave. And I'm not sure what else can... Can you help me find that in the complaint? Yes, sure. If you could give me the fellow's name who allegedly said that, that would probably allow me to search for it. Yes, one second. You can return to that on rebuttal. I'll let you carry on here. The other thing I'd like to point out, Your Honors, is that with these claims, with particular the equal protection claim, there's a burden shifting principle that goes on where, you know, courts recognize that at the pleading stage, it's difficult to find evidence to support allegations that a comparator is similar in all means. So all a plaintiff is required to do is put forth a plausible claim. With regard to, not to the Beebe case, but to the other two, weren't the situations different because of the provisions in the applicable law as to which, as to the duties and obligations of the town? Because there were different roads, different kinds of roads. Fuller Road was different from the other road. Yes, Your Honor, and I will concede that it is a little confusion with the references to TH-26 when the road is now divided into three segments. Mr. DeMarest has alleged that there are other Class 4 roads that are being treated substantially differently than his Class 4 road, and his allegation is that it's on the basis of these impermissible motivations because the town is acting out of... The town doesn't have responsibilities with some of the roads, and it does have responsibilities with others, right? Correct. That's correct. And that actually is pointed out by the other side with reference to the Albertini and Gibson comparisons. Yes, those... So with regards to Mary Gibson, I believe it is, that was for a turnaround or addition to the road for a school bus, so it doesn't even involve maintenance. We include that because it is showing that on this same road, the town is essentially doing what is requested by some of the municipal defendants, whereas when DeMarest requests for maintenance on his road, he is summarily rejected. His speech has been silenced with regard to the Class 4 road matrix that was created in 2019. The turnaround, though, correct me if I'm misremembering, but wasn't that on a Class 3 portion of the highway? Correct, yes. So that is a point of difference between your client's position and the comparator's. That is a difference. I'm not sure if it's material because I don't know that the town has pointed out that the standards for the turnaround are the same for road maintenance. Did he want a turnaround? No, Your Honor, he's looking for maintenance. Right, so we either are or are not lumping bus turnarounds and maintenance together, right? Your Honor, I believe that showing the way the town acts with some requests, and we would have to know what the standard is for requesting a turnaround versus maintenance. We'd also have to know that in order to know whether it is a valid comparator. That's correct. I believe there are sufficient allegations about other Class 4 roads. The individuals associated with those roads may not be identified, but the roads themselves are. We'll hear from your adversary. Good morning, Your Honor. I'm Kevin Kite. I'm representing the town of Underhill and the other municipal defendants. Can you answer why they don't have a point on the BB comparison? I think that the problem with that comparison is that, as your colleague pointed out, there's no indication that these were similar situations or that they're different people with different allegations of conflict of interest against them. And we don't know anything about the merits of those claims and whether or not there was a… You mean the malice part as opposed to the actual comparison? The actual comparison. We don't know what the issue was with respect to the conflict of interest complaint. Well, it's pretty easy with the other ones to say that they were different roads and that the state or the town had responsibility for certain roads and not other roads, and that may explain the different treatment. But when it comes to BB, my understanding is that there was at least a plausible argument that there was a conflict and not even a hearing was permitted. There were two people involved in the conflict of interest issue. One was Mr. Steinbauer, which was the complaint that Mr. Demarest brought, the conflict of interest complaint. We don't know exactly what that actually was. And the other conflict of interest complaint, which what we do know was a formal complaint because it was referenced in the town meeting minutes, was brought against Mr. BB. Two different people, two different alleged conflicts. We can determine something about the conflict about Mr. BB because we have actual reference to town meeting minutes that describe that hearing. We don't know what the other conflict of interest is alleged by Mr. Demarest against Mr. Steinbauer, at least not based on this complaint and the allegations in it. All we have is this single paragraph, paragraph 96, which just posits this straw man of I filed a conflict of interest complaint against one person and they did nothing, and somebody else filed a conflict of interest complaint against somebody else and they did something. How could that possibly be? And I think that the district court correctly concluded that this level of information is insufficient to establish whether or not this is an appropriate comparator at all. Mr. Demarest has taken the court and the town's task focusing. But he's saying that it's not that they turned him down. It's that they denied him a hearing. He didn't even get started with trying to set forth his concerns. He just was ignored. That's what they're saying. And if that's the case, should it go back so that they don't ignore him, so that they address the problem? I'm not saying that they necessarily, that he will win, but it may be that he's deserving of at least the same amount of due process, if you will. I do not understand Mr. Demarest reserting a due process violation because his conflict of interest complaint was not heard. He was treated differently in terms of whether he was allowed a hearing, that's all. And I would submit that this is a speculatory, conclusory argument because there's not enough information in paragraph 96 to know whether they're comparable. That's the basic response to that issue. But returning to the objection that we're focused too closely on the past, the reason for that is because the second amended complaint essentially restates all the old allegations from the first amended complaint. The issues we've been discussing, the 2019 Boulder, the covert, the conflict of interest complaint, all these issues were formally alleged in the first amended complaint, which at that time the plaintiff had an opportunity to argue should have met as stated in Equal Protection Clause claim. And that came all the way up here, was rejected, the court affirmed the dismissal of those claims, and it went to the Supreme Court, and the Supreme Court declined to hear it. So as far as the Equal Protection claims based on old allegations go, it seems as if we've already addressed those issues. It is now the effort to get a second bite at the apple on these Equal Protection issues. The district court only allowed Mr. Demarest to revise the second amended complaint with respect to the first amended claims. The Equal Protection claims just got thrown in there, and they got thrown in there based on old allegations. And they should be claim precluded. There's one new allegation, I think. It's about a gate. But that's a, right? That was in the old complaint, too. Oh, was it in the old complaint? Yes, it was. Okay. And the court rejected that the first time around as, well, that's just speculation. Right. It hasn't happened yet. It still wouldn't be, I think. And the court said it again this time around. So, I mean, we don't have new allegations. And in the end, what we have to, it comes down to what are the facts alleged in the complaint, and do they support the asserted claim? Now, the case that the plaintiff keeps pointing to is the Who and the Leclerc claim that was permitted to survive in that case. And that's very instructive because the plaintiff there did not have good evidence of discriminatory intent. What the plaintiff did have was two instances of the same job site, same workers, same pond, and I believe it was an Asian worker being cited and a white worker not being cited for the same violation. And the reason the court was willing to accept that as proof of impermissible discrimination is because they were so similar circumstantially that you were permitted to draw the conclusion that impermissible discrimination was at work. Well, that raises the question of the difference between the Leclerc and Olick because Leclerc doesn't require the same degree of similarity as Olick, right? That's the theory, but it's – It's the theory, but it's not one that you are particularly fond of. That's true, Your Honor. But it's also supposed to be a very limited doctrine. And the case in Leclerc, the claim in Who, the Leclerc claim in Who, the court noted was extremely thin. And when it came back on summary judgment, in fact, it failed because the plaintiff couldn't show that there wasn't a legal reason for the difference. Right. But we don't know what will happen if there's discovery, et cetera. So unless the court has further questions, I don't feel the need to spend any more time. Thank you, Your Honors. We'll hear rebuttal. Thank you. And to go back to your earlier question about that allegation I referenced earlier, that's in the appendix at page 50 and paragraph 133 of the second amended complaint. Mr. Damaris alleges that the planning commission director stated, Your incessant whining and profound ignorance is of little important interest. If you don't like it here, you can leave. I do want to point out one important issue that I think might have been looked over is we are not disputing the fact that the town has discretion with regard to maintenance on class four roads. But with all equal protection claims, the town cannot exercise that discretion on the basis of impermissible motives or ill will or malice. And we believe we've, in the pleading stages here, established sufficient basis for the court to allow this to go to discovery. And I do think it's important to point out that in the Who case, this court did allow the claim to survive. And it was because the claim was a plausible claim. The court said it might not be likely, it might not be probable, but it's plausible reading the inferences from the complaint. And I believe we've just heard that the two conflict of interest complaints are similarly situated. And right now we don't have evidence about what the details were or what the standards were. And that's information that would come out in discovery and be addressed at the summary judgment. Were those alleged in the first amendment amended complaint, the conflict of interest complaints? I believe the conflict of interest complaint was, but I'm not sure about. There was also a subsequent petition for public accountability that was also in 2020. What I'm focused here, right, is that this has been up here once. Yes. The question is, what's new? That's not precluded by our prior summary order about that conflict of interest complaint or whatever we're calling it. I think that's pretty firmly called that. I believe, Your Honor, it's the difference is there was no equal protection claim in the first amended complaint based on that. Thank you both. And we will take the matter under advisement.